# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

|                                        |   |                      |
|----------------------------------------|---|----------------------|
| **MAURICIO CHONG,**                    | § |                      |
|                                        | § |                      |
| **Plaintiff,**                         | § |                      |
|                                        | § | **EP-22-CV-00365-FM** |
| **v.**                                 | § |                      |
|                                        | § |                      |
| **SUNRISE RESTAURANTS, LLC d/b/a**     | § |                      |
| **DENNY'S,**                           | § |                      |
|                                        | § |                      |
| **Defendant.**                         |   |                      |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the court is "Plaintiff's Motion to Remand" ("Motion") [ECF No. 4], filed November 7, 2022, by Mauricio Chong ("Plaintiff"). Therein, Plaintiff requests that this court remand this cause back to County Court at Law Number Three, in El Paso County, Texas, and requests attorney's fees and costs.[1] Sunrise Restaurants, LLC d/b/a Denny's ("Defendant") responded requesting remand be denied and removal effectuated, and requests fees and costs.[2] After due consideration of the motions and applicable law, the motion is **GRANTED**.

## I.    BACKGROUND

This dispute begins with a slip and fall occurring on or about September 21, 2019.[3] Plaintiff, allegedly, entered the restaurant and slipped and fell on water striking his head and sustaining a variety of injuries.[4] Plaintiff filed his original complaint on September 14, 2021,

---

[1] "Plaintiff's Motion to Remand" ("Mot.") 18, ECF No. 4, filed Nov. 7, 2022.

[2] "Defendant's Response to Plaintiff's Motion to Remand" 15, ECF No. 5, filed Nov. 22, 2022.

[3] "Plaintiff's Original Petition and Jury Demand" 2, ECF No. 5–1, filed Nov. 22, 2022.

[4] *Id*.

requesting monetary relief of "no more [than] $74,500.00" for medical expenses, treatments, lost wages, pain and suffering, mental anguish, etc.[5] On January 7, 2022, the Plaintiff provided his disclosures to the Defendant which included a general statement that his damages would be "past and future pain and suffering, past and future mental anguish, and past and future emotional distress."[6]

On May 6, 2022, Plaintiff sent a post-complaint settlement demand letter which calculated the Plaintiff's total damages to be around $326,714.20, and offered to settle the matter, at that time, for $74,000.00.[7] Following failed settlement talks, Plaintiff's deposition occurred on May 12, 2022 where he made general statements that he is "not the same person anymore" and his "personal life. . . suffered because of this incident."[8] The case was mediated on September 30, 2022 and was unsuccessful.[9] On October 5, 2022 the Plaintiff amended his petition changing only his damage allegations to: "over $250,000 but not more than $1,000,000.00."[10] Following notice of the amended complaint, the Defendant filed its notice of removal on October 14, 2023; one year and thirty days after commencement of the lawsuit.[11] The Plaintiff then timely filed his motion for remand.

---

[5] *Id.* at 5–6.

[6] Mot. at 4.

[7] *Id.* at 4–5.

[8] *Id.* at 6.

[9] *Id.*

[10] *Id.* at 7.

[11] *Id.*

II.   **LEGAL STANDARD**

Title 28 U.S.C. Section 1441(a) ("Section 1441") allows for the removal of civil actions brought in a state court over which a district court has original jurisdiction.[12]  "A federal district court may exercise original jurisdiction over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties."[13]  "Thus, under § 1441, removal is proper only when the court has original jurisdiction over at least one asserted claim under either federal question or diversity jurisdiction."[14]

Title 28 U.S.C. Section 1446 ("Section 1446") governs the procedure for removal.  Under Section 1446(b)(1), "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceedings is based."[15]  Alternatively, if an initial pleading is not removable, 28 Section 1446(b)(3) states, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[16]  Finally, Section 1446(c)(1) disallows removal for diversity actions "more than 1 year after commencement of the action,

---

[12] 28 U.S.C. § 1441(a).

[13] Energy Mgmt. Servs., L.L.C. v. City of Alexandria, 739 F.3d 255, 258–59 (5th Cir. 2014) (citing 28 U.S.C. §§ 1331, 1332, 1369).

[14] *Id.* at 259.

[15] 28 U.S.C. § 1446(b).

[16] 28 U.S.C. § 1446(b)(3).

unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."[17]

Removal raises significant federalism concerns.[18]  The removing party bears the burden of showing federal jurisdiction exists and removal was proper.[19]  Any doubts regarding whether federal jurisdiction is proper are resolved against removal.[20]

## III.   <u>DISCUSSION</u>

The dispute boils down to the following issues: (1) was the Defendant put "on notice" to remove following any of the Plaintiff's alleged "other papers" during the course of discovery, (2) was the Defendant procedurally barred from removal based on 1446(c)(1), and (3) if the Defendant was procedurally barred, did the Plaintiff commit "bad faith" as to overcome the one year requirement of 1446(c)(1).

   A.    *The Defendant was put On Notice Following the Plaintiff's May 6, 2022, Demand Letter.*

The parties concede that complete diversity exists and that the amount in controversy does exceed the minimum requirement for federal jurisdiction. However, the Plaintiff makes the argument that the Defendant's opportunity to remove came and passed at multiple points while the Defendant argues that their removal is timely because they were not put on notice until the first amended complaint and that the Plaintiff's bad faith contributed to their removal occurring after the one-year time bar on diversity jurisdiction removals. The Plaintiff states that the Defendant was put on notice that the amount in controversy was met, and the action removable, on four

---

[17] 28 U.S.C. § 1446(c)(1).

[18] Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008).

[19] De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).

[20] Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000).

separate occasions during the first year of litigation: (1) September 14, 2021 when the original complaint was filed, (2) January 7, 2022 when Plaintiff provided his initial disclosures, (3) May 6, 2022 when Plaintiff sent his post-complaint demand letter, and (4) May 12, 2022 when Plaintiff's deposition occurred. Three of these did not provide notice of removability but the post-complaint demand letter did put the Defendant on notice for removal.

It is axiomatic that "the removal clock begins to run 'from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'"[21] The "sum claimed by the plaintiff controls if the claim is apparently made in good faith."[22] The law is clear that we are to take the Plaintiff's claim of damages of $74,500 as made in good faith unless the Defendant can prove otherwise. Defendant argues that Plaintiff filed their initial complaint in "bad faith," but points to little evidence to reach that conclusion. A dive into "bad faith" will occur later, but for now, it is enough to conclude that the initial complaint was not filed in bad faith; thus, the initial complaint was not removable.

If the initial complaint is not removable and does not start the removability clock, § 1446(b)(3) allows a defendant to remove within 30 days upon notice of removability from an amended pleading, motion, order, or other paper.[23] "Other paper" must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support jurisdiction.[24] An "other paper" cannot include any demand letter or information given to a

---

[21] Leffall v. Dallas Independent School Dist., 28 F.3d 521, 525 (5th Cir. 1994).

[22] St. Paul Mercury Indem. Co. v. Red Cab. Co., 303 U.S. 283, 288 (1938).

[23] *See* 28 U.S.C. § 1446(b)(3).

[24] Addo v. Globe Life and Acc. Ins. Co., 230 F.3d 759, 762 (5th Cir. 2000).

defendant by the plaintiff prior to filing the initial complaint as per the text of the statute.[25] The plain meaning of the statute "suggests that information giving notice of removal must be contained in a writing."[26] Thus, a transcript of deposition testimony has been held to be "other paper."[27] Workers compensation report stating damages in excess of the amount in controversy rule has been held to be "other paper."[28] Post-complaint demand letter for settlement constitutes an "other paper" starting the clock for removal.[29] Correspondence between the parties and their attorneys or between the attorneys is usually accepted as an "other paper."[30] Therefore, in terms of their form, the Plaintiff's interrogatory responses, post-complaint demand letter, and deposition transcript would each meet the definition of an "other paper" so long as their substance communicated removability to the Defendant.

In determining whether the Defendant is given notice of removability we will not inquire into what the Defendant subjectively knows at the time.[31] We must look at the "other paper" and see if it clearly communicates removability to the Defendant. With this in mind, neither the Plaintiff's interrogatories nor the deposition communicated removability to the Defendant. Plaintiff points to their interrogatory response in which they did not limit their damages to under

---

[25] *See* Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992).

[26] *See* Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 609 (5th Cir. 2018).

[27] *See id*. at 608.

[28] *See* Knudson v. Systems Painters, Inc., 634 F.3d 968, 973–74 (8th Cir. 2011).

[29] *See Addo*, 230 F.3d at 762.

[30] *See id.* at 761.

[31] *See Knudson*, 634 F.3d at 974.

the jurisdictional amount.[32] However, this indeterminate language can mean anything from well over the jurisdictional amount to zero dollars. Plaintiff himself states that these damages are a jury determination, and a jury could determine that the Plaintiff is entitled to zero compensatory damages. Such an interrogatory response is far from a clear communication of removability to the Defendant. Likewise, the deposition testimony suffers from the same infirmity. Plaintiff makes general statements such as "his personal life, as well as his business, suffered because of this incident" and states "yes" in response to a question on whether he is claiming he will need future medical treatment.[33] This hardly makes it "ascertainable" to the Defendant that the amount in controversy will exceed $75,000.00 as the Plaintiff claims. Just as the interrogatory, it is possible a jury decides that the Plaintiff will need *no* additional medical treatment and that he will *not* be compensated for such. In conclusion, neither of these pieces of evidence clearly communicates removability to the Defendant.

However, the post-complaint letter on May 6, 2022, does clearly communicate removability to the Defendant. Through its fourteen pages, Plaintiff lays out his evidence of damages. In conclusion, he states his jury damages would total $326,714.20[34] and offers to settle for $74,000.00.[35] This "other paper" shows Plaintiff's belief that his damages are above the jurisdictional amount and thus starts the 30-day clock for removability. Such a finding is also

---

[32] Mot. at 4. (stating "Plaintiff's past and future pain and suffering, past and future mental anguish, past and future emotional distress, will be a jury determination.").

[33] Mot. at 6.

[34] "Confidential Supplemental Communication for Settlement Purposes Only" 13–14, ECF No. 4–2, filed Nov. 7, 2022.

[35] *Id.*

consistent with our jurisprudence.[36] As such, the court finds that the May 6, 2022, post-complaint demand letter is an "other paper" pursuant to 1446(b)(3) that put the Defendant on notice for removal. Defendant, subsequently, did not remove until October 14, 2022. Well past the 30-day timeframe that began in May.[37]

While the court is confident that this failure alone is enough—based on the structure of the statute—to grant the Plaintiff's motion to remand, we will nevertheless address the one-year time bar and Defendant's argument of "bad faith" to showcase that the Defendant did not have a leg to stand on for removal.

B.      *The Defendant was Time Barred from Removal Pursuant to 1446(c)(1).*

Section 1446(c)(1) states that removal cannot be effectuated by (b)(3) based on diversity jurisdiction more than one year after commencement of the action, unless the court finds the Plaintiff acted in bad faith.[38] Commencement of an action is determined by the rules of civil procedure in the state that the suit was first filed in. Texas Rules of Civil Procedure state that "a civil suit in the district or county court shall be commenced by a petition filed in the office of the

---

[36] *See Addo*, 230 F.3d at 760 (deciding that a post-complaint demand letter offering to settle the suit for an amount in excess of $75,000 constitutes "other paper" and started the 30-day removability clock); *see also*, Fernando Garcia v. MVT Services, Inc., 589 F.Supp.2d 797 (W.D. Tex. July 15, 2008) (holding that Defendants receipt of Plaintiff's post complaint demand letter offering to settle the case for $750,000 is receipt of an "other paper" and is sufficient for removal purposes.).

[37] In Defendant's response, they argue that this post-complaint demand letter is not reasonable, or, put in terms of the Fifth Circuit in *Addo*, a "sham" because the damages are an unreasonable estimate. Defense relies, partly, on Monzon v. Lowe's Companies, Inc., EP-16-CV-00482-KC, 2017 WL 10743000 (W.D. Tex. May 26, 2017) in which a fellow Western District Judge ruled that a $250,000 post-complaint demand letter that was sent to defense based on medical expenses of $6,000 to $8,000 was not a "sham." Defendant's reliance on this case is misplaced because the Court in *Monzon* went on to rule that the demand was unreasonable and thus the Defendant could not prove that damages would be above the jurisdictional amount; ultimately, remanding the case to state court. *Id.* at 8. It seems clear that the post-complaint letter in this case was not a sham for many of the reasons discussed in *Monzon*, but also because it would not make logical sense for the Plaintiff, who wants to be in state court, to send a post-complaint letter that rightfully opened them up to removal, something that they don't want, and then have it all be a sham. The damages in the post-complaint letter also seem reasonable given the Plaintiff's initial request of $74,500 in damages.

[38] 28 U.S.C. § 1446(c)(1) (2011).

clerk."[39] This initial pleading only starts the removal clock if the pleading "affirmatively reveals on its face" that diversity jurisdiction exists.[40] If a case is not initially removable at the time of the initial complaint, then the one year time bar begins to run.[41] Congress did not intend for the one-year time limit to apply to all diversity removals.[42] When adding 1446(c)(1), Congress was primarily concerned with late removals of cases that had already made considerable progress in state courts.[43] This is why the one year time bar applies, and begins to run, when a case is not initially removable based on the initial complaint.

This case was not initially removable based on the initial complaint. As discussed earlier, the initial pleading satisfied complete diversity since the Plaintiff is a Texas resident and the Defendant corporation is not a resident of Texas; however, the Plaintiff plead for damages totaling $74,500. On its face, this pleading does not satisfy the amount in controversy requirement and the one-year time bar began to run on September 14, 2021.  Defendant's removal on October 14, 2022, is plainly over the one-year time limit. Therefore, Defendant argues that Plaintiff acted in bad faith in order to prevent their removal.

C.     *The Plaintiff did not act in Bad Faith Preventing the Defendant from Removing.*

The Defendant makes two arguments that Plaintiff acted in "bad faith" to prevent removal: (1) the Plaintiff crafted their initial pleading to purposefully avoid federal jurisdiction, (2) Plaintiff

---

[39] TEX. R. CIV. P. 22 (2023).

[40] *See Chapman*, 969 F.2d at 163.

[41] *See* New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 886 (5th Cir. 1998) ("When read in its entirety with these precepts in mind, Section 1446 requires that we interpret the one-year limitation on diversity removals as applying only to the second paragraph of that section, i.e., only to cases that are not initially removable.").

[42] *Id.*

[43] *Id.*

amended their complaint shortly after the one-year time bar finished running and only updated his damages.[44] 1446(c)(2)(B) states that "removal of the action is proper on the basis of an amount in controversy. . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."[45] Thus, pleading an amount in controversy under the jurisdictional amount—when the evidence shows that it should have been over—is de facto bad faith. Outside of this specific example in the statute itself, what constitutes bad faith has been expounded upon by the courts.

The Ninth Circuit described a Defendant's burden to establish bad faith as follows: "defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal. . . *district courts apply a strict standard and find bad faith when a plaintiff fails to actively litigate a claim against a defendant in any capacity*."[46] Here in the Fifth Circuit, "Conduct rises to the level of 'bad faith' when a party makes a '*transparent attempt to avoid federal jurisdiction*'. . . such as the plaintiff deliberately fail[ing] to disclose the actual amount in controversy to prevent removal."[47] Additionally, even if damages did exceed the jurisdictional amount prior to the amended complaint, "courts have found that mere failure to quantify damages until after the one-year mark does not warrant an exception to the one-year bar on removal."[48] The jurisprudence makes clear that a defendant has a high burden to bear in proving a plaintiff acted in bad faith to

---

[44] *See* "Defendant's response to Plaintiff's Motion to Remand," ECF No. 5, filed Nov. 22, 2022.

[45] 28 U.S.C. § 1446(c)(2)(B) (2011).

[46] Kolova v. Allstate Insurance Co., 438 F.Supp.3d 1192, 1196 (W.D. Wash. 2020).

[47] Lujan v. Alorica, Inc., No. IP-15-CV-355-KC, 2016 WL 8857008 *4–5 (W.D. Tex. May 24, 2016).

[48] *Id.* at 8.

prevent removal and the inquiry is focused on deliberate actions by the plaintiff that go beyond those normally done during litigation.

The Defendant did not meet its burden. Defendant's first argument of bad faith, that Plaintiff structured their initial complaint in a deliberate manner to avoid removal, wrongly relies on *De Aguilar*. In *De Aguilar,* the Fifth Circuit addressed Plaintiff's failure to plead correctly under the Texas Rules of Civil Procedure Rule 47; thus, the pleading was not made in good faith.[49] However, the Texas Rules of Civil Procedure Rule 47 was amended in 2013 and the Fifth Circuit

---

[49] *See De Aguilar*, 47 F.3d at 1409–10.

has new jurisprudence addressing a Texas state court pleading. Texas Rules of Civil Procedure 47 Provides in relevant part:[50]

An original pleading ... shall contain:

(a) a short statement of the cause of action sufficient to give fair notice of the claim involved;

(b) a statement that the damages sought are within the jurisdictional limits of the court;

(c) except in suits governed by the Family Code, a statement that the party seeks:

(1) only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs;

(2) monetary relief of $250,000 or less and non-monetary relief;

(3) monetary relief over $250,000 but not more than $1,000,000;

(4) monetary relief over $1,000,000; or

(5) only non-monetary relief; and

(d) a demand for judgment for all the other relief to which the party deems himself entitled.

The Fifth Circuit addressed the new state pleading rules, and how it changes the rule of *De Aguilar*. In *Durbois*, the Fifth Circuit stated that "nothing in the plain text of this Rule prevents a plaintiff from demanding damages **up to** but no higher than a stated amount."[51] "[A]fter the amendment, Rule 47 contemplates pleadings that 'specify the maximum amount claimed,' this further indicates that Rule 47 **permits the claiming of specific sums**."[52] "Moreover, the mere fact that Durbois pleaded a demand for specific damages cannot support bad faith." [53] Very similar to

---

[50] Tex. R. Civ. P. 47 (2023).

[51] Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES Mortg. Inv. Tr. 20054 Mortg. Backed Notes, 37 F.4th 1053, 1059 (5th Cir. 2022).

[52] *Id.* at 1060.

[53] *Id.*

the pleading in this case, *Durbois* included a pleading in which the Plaintiff sought damages not to exceed $74,500.[54]

As current Fifth Circuit doctrine dictates, the Plaintiff in this matter did not plead in violation to Rule 47, but in accordance with what is allowable under Rule 47. Therefore, the Plaintiff's initial pleading was made in good faith.

The Defendant's next argument focuses on the Plaintiff's October 5, 2022, amended pleading just a few weeks after the one-year time bar passed. Defendant points out that Plaintiff only amended their damages to "over $250,000 but not more than $1,000,000.00."[55] A sizeable increase to the original $74,500. Defendant says that—absent an explanation from the Plaintiff—there is simply no other explanation for such a change other than Plaintiff deliberately trying to contravene removal. There are two problems with Defendant's argument. One, it misstates the burden. The Defendant has the burden to prove that Plaintiff's amended petition points to bad faith; it is not the Plaintiff's obligation to explain so. Second, Plaintiff does offer an explanation for his amended pleading. Plaintiff states that the parties attempted to mediate the case on September 30, 2022, but it was unsuccessful.[56] Plaintiff then amended his pleading on October 5, 2022, in response to the failed mediation. Parties will make a variety of moves and decisions over the course of litigation jockeying for position. The Plaintiff very well may have amended his pleading in an attempt to apply more pressure on the Defendant. It is also not uncommon for damages to change over the course of litigation. "Texas law permits a plaintiff to amend his petition to request an increased amount of damages at any time before a final judgment is entered, even after a jury

---

[54] *Id.* at 1055.

[55] Mot. at 7.

[56] Mot. at 6.

verdict."[57] There is certainly more than "one" explanation for why the Plaintiff amended his pleading, contrary to what Defendant supposes. As such, all doubts are to be resolved in favor of remand in removal situations, and Defendant offers no other evidence to prove that Plaintiff amended his pleading in bad faith; therefore, the court finds that the Plaintiff has not acted in bad faith to prevent removal.

       D.     *Awarding Plaintiff Attorney Fees and Costs.*

28 U.S.C. § 1447(c) states, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[58] Absent unusual circumstances, courts should award costs and fees upon remand of a case "only where the removing party lacked an objectively reasonable basis for seeking removal."[59] If the removing party "could conclude from th[e] case law that its position was not an unreasonable one" at the time of removal, then it had an objectively reasonable basis for removal.[60] "There is no presumption for or against awarding fees."[61]

Plaintiff requests attorney fees, costs, and expenses pursuant to 1447(c) because the Defendant does not have an objectively reasonable basis for removal.[62] Defendant requests that they be awarded costs and fees or, alternatively, not award Plaintiff since they acted in "bad faith" to prevent removal. As highlighted earlier, the Plaintiff did not act in bad faith to prevent removal.

---

[57] *See* David Hernandez v. State Farm Lloyds, DR-16-CV-164-AM/CW, WL 8131570 *3 (W.D. Tex. Sep. 19, 2017).

[58] 28 U.S.C. § 1447(c) (2011).

[59] Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

[60] Thomas v. S. Farm Bureau Life Ins. Co., 751 F. App'x 538, 540 (5th Cir. 2018).

[61] Admiral Ins. Co. v. Ahshire, 574 F.3d 267, 280 (5th Cir. 2009).

[62] Mot. at 14–15.

The inquiry into whether a Defendant had an objectively reasonable basis for removal is not grounded in the Defendant's subjective good-faith belief that removal was proper, but whether relevant case law foreclosed Defendant's removal basis. Guided with this framework, the Defendant did not have an objectively reasonable basis for removal.

Defendant's argument that the Plaintiff acted in bad faith when he filed his initial complaint is without merit. Defendant relied on superseded law that did not account for Texas' amended pleading rule and the Fifth Circuit has since stated that a pleading, just like Plaintiff's, is allowable under Rule 47. Therefore, Plaintiff's initial pleading was not made in bad faith for failing to follow the state's pleading rules and we take Plaintiff's damage amount as plead in good faith. So, the case was not removable when the initial pleading was filed. This started the one-year time bar under 1446(c)(1) on September 14, 2021. Case law clearly lays out that this time bar would begin if the initial pleading was not removable on its face. Then, the Defendant was later given notice to remove on May 6, 2022, pursuant to 1446(b)(3). Again, case law is clear that a post-complaint letter is an "other paper" that can give rise to removability. Plaintiff clearly laid out what he believed his total damages were in that post-complaint letter and it was clearly over the jurisdictional amount. Thus, a 30-day clock began to run on May 6, 2022, to remove. Defendant failed to remove. Lastly, after Defendant failed to remove once the one-year time bar passed, Plaintiff did not act in "bad faith" when amending his petition. Texas law makes clear that a Plaintiff may amend their petition for increased damages so long as it does not operate as a surprise

to the opposite party.[63] In conclusion, case law and statutes foreclosed Defendant's removal basis. Plaintiff is entitled to reimbursement of attorney fees and costs incurred as a result of removal.

When determining the amount of fees that may be awarded upon remand, district courts in the Fifth Circuit use the lodestar method.[64] This method involves two steps. First, the district court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.[65] The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[66] The factors are the (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.[67]

Plaintiff does not provide figures or support for how much fees and costs he is requesting. For costs, the party seeking to recover costs "shall, within twenty-one days after the entry of judgment, file and serve a motion for costs and necessary disbursements, also known as a bill of

---

[63] Tex. R. Civ. P. 63 (2023).

[64] *Lujan*, 2016 WL 8857008, at *10.

[65] Can Cap. Asset Servicing, Inc. v. Walker, No. 1:17-CV-1147-RP, 2019 WL 2298703 *3 (W.D. Tex. May 30, 2019).

[66] *Id.*

[67] *Id.*

costs."[68] This bill of costs needs to specify costs so that the nature of the charge can be readily understood.[69] The bill of costs is to be used for filing fees, witness fees, and other types of fees, but not to attorney's fees.[70] For attorney's fees, Plaintiff must submit proper documentation as specified in Local Rule CV-7/Local Rule CV-54. Accordingly, the court enters the following orders:

1. It is **HEREBY ORDERED** that Plaintiff's "Motion to Remand," ECF No. 4, is **GRANTED.**

2. It is **FURTHER ORDERED** that the Clerk shall **REMAND** the above-captioned case to County Court at Law Number Three, in El Paso County, Texas.

3. It is **FURTHER ORDERED** that Plaintiff shall submit their material on attorney's fees and costs no later than **April 14, 2023**.

**SIGNED AND ENTERED** this **23rd** day of **March 2023.**

_____
**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[68] Local Rule CV-54(1).

[69] *Id.*

[70] *Id.*

17